UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Melvin Wallace, Shirley Hardt, Lewis Simpson, William Cobb, Erica Davis-Holder, Rotem Cohen, Julian Wagner, Rose Wagner, Erin Stilwell, Maria Eugenia Saenz Valiente and Adam Burnham, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ConAgra Foods, Inc.,<br><br>    Defendant. | Civil No. 12-1354 (DWF/TNL)<br><br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

_____

Anne T. Regan, Esq., and Hart L. Robinovitch, Esq., Zimmerman Reed, PLLP; Caleb L.H. Marker, Esq., and Christopher P. Ridout, Esq., Ridout & Lyon LLP; and Christopher J. Kuhlman, Esq., Kuhlman Law, PLLC, counsel for Plaintiffs.

Benjamin W. Hulse, Esq., Corey Lee Gordon, Esq., Jennifer Y. Dukart, Esq., Jerry W. Blackwell, Esq., and Emily A. Babcock, Esq., Blackwell Burke PA, counsel for Defendant.

Clifford M. Greene, Esq., and Karl C. Procaccini, Esq., Greene Espel PLLP, counsel for Amici Curiae.

_____

**INTRODUCTION**

   This matter is before the Court on Defendant ConAgra Foods, Inc.'s ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. No. 14.) For the reasons set forth below, the Court grants Defendant's motion.

## BACKGROUND

This case arises out of Defendant's representations that its Hebrew National products are "100% Kosher." (Doc. No. 8, Am. Compl. ¶ 4.) In particular, Plaintiffs claim that Defendant misrepresented its Hebrew National products as being made from "Premium cuts of 100% Kosher Beef." (*Id.* ¶ 7, Ex. A.) Defendant's website further states that the Triangle K[1] symbol utilized on its Hebrew National products "signifies 'kashruth' (kosher) as defined by the most stringent Jews who follow Orthodox Jewish Law." (*Id.* ¶ 7, Ex. B.)

Plaintiffs assert that Defendant, through its contractors (Triangle K and AER),[2] failed to slaughter cattle used in its products in compliance with "objective" standards, as set forth by Triangle K and AER, that must be followed as required by the tenets of Kashrut. (*Id.* ¶¶ 78-108.) Specifically, Plaintiffs state that the animals and meat used in Defendant's Hebrew National products have not been consistently inspected, slaughtered, cleaned, and segregated in the manner "required to be considered kosher under the standard Defendant represents to the public." (*Id.* ¶¶ 92, 97, 103, 106.) In their Amended Complaint, Plaintiffs provide a detailed account of the ways in which Defendant and its contractors (Triangle K and AER) have failed to follow such procedures. (*Id.* ¶¶ 90-108.) Thus, Plaintiffs allege that "the representation on Hebrew

---

[1]    Triangle K is the organization "responsible for the overall supervision of the kosher processing activities at multiple beef processing facilities . . . ." (Am. Compl. ¶ 57.)

[2]    "AER is the sole slaughterer and inspector, and Triangle K the sole certifier, of all
(Footnote Continued on Next Page)

National products that they are 100% kosher pursuant to the standard Defendant represents is inaccurate and misleading." (*Id.* ¶¶ 103, 105, 106.) While Plaintiffs do not claim to keep kosher, they claim to have been harmed financially as a result of paying a "premium price" for Defendant's Hebrew National products, which Defendant allegedly misrepresented on its packaging as being "100% kosher beef." (*Id.* ¶¶ 29-38.)

Plaintiffs' Amended Complaint asserts the following causes of action against Defendant: (1) Negligence; (2) Violation of Nebraska Uniform Deceptive Trade Practices Act; (3) Violation of Nebraska Consumer Protection Act; (4) Violation of State Consumer Protection Laws; and (5) Breach of Contract. (*Id.* ¶¶ 126-94.) Defendant now moves to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 14.)

## DISCUSSION

**I.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States,* 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the

---

(Footnote Continued From Previous Page)
'kosher' meat used in Defendant's Hebrew National products." (Am. Compl. ¶ 58.)

3

non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id.* In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of Rule 12(b)(6). *Id.*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the U.S. Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable

4

expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Motion to Dismiss

Defendant argues that Plaintiffs' claims must be dismissed because the Court lacks subject matter jurisdiction over this dispute. In particular, Defendant contends that Plaintiffs' claims are barred by the Establishment Clause and the Free Exercise Clause of the First Amendment. While the Court finds the allegations in the Amended Complaint highly disconcerting, the Court lacks the subject matter jurisdiction required in order for it to adjudicate Plaintiffs' claims on the merits.[3]

"The First Amendment 'severely circumscribes' the role that civil courts may play in resolving disputes touching on matters of faith." *Askew v. Trs. of the Gen. Assembly*, 684 F.3d 413, 418 (3d Cir. 2012). "Civil court review of doctrinal matters inhibits free exercise of religion and usurps the power of religious authorities" to resolve matters purely of religious concern. *Id.*, citing *Hosanna–Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 704–06 (2012). As such, Supreme Court precedent has firmly established the principle that civil courts may not be called upon to interpret doctrinal matters or tenets of faith. *See Jones v. Wolf*, 443 U.S. 595, 602 (1979); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976) (recognizing "the general rule that religious controversies are not the proper subject of civil court inquiry");

---

[3] Defendant asserts several additional grounds for dismissal of the Amended Complaint in its briefing. Because the Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims, the Court does not reach Defendant's other arguments.

*see also Kaufmann v. Sheehan*, 707 F.2d 355, 359 (8th Cir. 1983) ("*Milivojevich* and its underlying rationale prevent this court from deciding what are inherently religious issues."); *Scharon v. St. Luke's Episcopal Presbyterian Hosps.*, 929 F.2d 360, 363 (8th Cir. 1991) (determining that a review of personnel decisions by church-affiliated institutions affecting clergy "would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made"). Adjudication of Plaintiffs' claims in this case would clearly require a review of doctrinal and religious matters.

Plaintiffs assert that Defendant's method of cattle slaughter, as carried out by its AER contractors, violates several tenets of Kashrut. (*See* Am. Compl. ¶¶ 90-108.) Plaintiffs suggest that Defendant has failed to comply with a somehow "objective" standard of kosher slaughter as defined by Triangle K and AER. (*Id.* ¶¶ 80-85.) The laws of Kashrut, however, and the determination of whether a product is in fact "kosher," are intrinsically religious in nature. Any judicial inquiry as to whether Defendant misrepresented that its Hebrew National products are "100% kosher" (when Triangle K, an undisputedly religious entity, certified them as such) would necessarily intrude upon rabbinical religious autonomy. "An examination of the gradations in the rules" of Kashrut or the "severity with which the rabbis enforced those rules is precisely the type of religious-based claim the Court is forbidden from entertaining." *Maruani v. AER Servs., Inc.*, Civ. No. 06-176, 2006 WL 2666302, at *7 (D. Minn., Sept. 18, 2006). Such an inquiry would be "akin to evaluating 'the conformity of the members of a church to

6

the standards or morals required of them,' which has long been forbidden." *Id.*, citing *Watson v. Jones,* 80 U.S. 679, 733 (1871); *see also Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (acknowledging that *Watson* radiates "a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine").

Notably, Defendant is a secular entity, and Plaintiffs appear to concede that Defendant is not responsible for making kosher determinations with respect to the meat it uses in its Hebrew National products. For better or for worse, Plaintiffs made the tactical decision to leave Triangle K (the organization whose Orthodox rabbinical authority granted Defendant's Hebrew National products kosher certification) and AER (the entity whose employees are responsible for performing the kosher slaughters) out of this lawsuit.[4] Importantly, however, for purposes of Defendant's advertising and labeling, Defendant relies on Triangle K for its certification that Defendant's Hebrew National products are kosher.

Plaintiffs contend that, as opposed to the religious doctrine and ideological standards of Orthodox Judaism, a system of quotas determines what meat, and how much of it, will be certified as kosher.[5] (*See* Am. Compl. ¶ 93.) Even assuming Defendant

---

[4]     The Court expresses no opinion as to the validity of any claims Plaintiffs may have against Triangle K or AER or whether such claims would be justiciable.

[5]     In particular, Plaintiffs allege the following:
Pressure is put on the employees inspecting and slaughtering the cows to

(Footnote Continued on Next Page)

applies pressure to Triangle K to certify a certain percentage of meat as kosher, if any fraud has actually taken place with respect to the certification of Hebrew National Products as kosher, such fraud would be on the part of Triangle K, if Triangle K intentionally certified meat as kosher while knowing that it failed to meet Triangle K's own stated requirements for certification.

Moreover, to the extent Plaintiffs allege that AER employees reported many of the "transgressions" that occur at Defendant's AFG facilities, that information was reported directly to Triangle K rabbis (Rabbi Aryeh Ralbag and Rabbi Moshe Fyazakov) and AER managers (Mashgichim); yet, according to Plaintiffs, the transgressions continued. (*Id.* ¶ 107.) There is no allegation, however, that Defendant itself makes any determinations as to whether the animals slaughtered at its AFG facilities satisfy the laws of Kashrut. Rather, as Plaintiffs acknowledge, Defendant "contracts with third-party kosher certification agency Triangle K to provide kosher food supervision and certification services." (*Id.* ¶ 55.) It is Triangle K and its Orthodox rabbis who make such determinations. Naturally, therefore, this Court cannot determine whether Defendant's

---

(Footnote Continued From Previous Page)
    maximize kosher meat production by slaughtering unclean cows. Further, certain quotas are applied at the AFG facilities to ensure than a certain predetermined amount of the total cattle population (approximately 70%) brought to the AFG facility for slaughter produces kosher meat to provide Defendant. By setting artificial, pre-determined quotas, the kosher inspection process becomes defective and unreliable. Because of these quotas, meat from cows that should not qualify for kosher certification ends up being marked kosher and used in Hebrew National products.
(Am. Compl. ¶ 93.)

Hebrew National products are in fact kosher without delving into questions of religious doctrine.

## CONCLUSION

The definition of the word "kosher" is intrinsically religious in nature, and this Court may not entertain a lawsuit that will require it to evaluate the veracity of Defendant's representations that its Hebrew National products meet any such religious standard. Because all of Plaintiffs' claims derive from Defendant's alleged misrepresentation that its Hebrew National products are "100% kosher," all counts of the Amended Complaint are barred by the First Amendment. The Court finds that it lacks the requisite subject matter jurisdiction to preside over this dispute. Therefore, the Amended Complaint is properly dismissed in its entirety.

The Court recognizes that the laws of Kashrut and other issues of Biblical and Talmudic interpretation are quite properly the subject of rabbinical debate and have evolved over the course of many centuries. While perhaps perplexing, any change in Rabbi Ralbag's, or Triangle K's, position with respect to whether or not a common standard set of "objective" requirements for kosher slaughter exists is immaterial for purposes of the Court's analysis here. (*See* Doc. No. 29 at 16-19.) Regrettably, however, the Court recognizes that its decision likely leaves consumers without a remedy—save opting not to purchase or ingest Defendant's Hebrew National products, or other products certified by Triangle K—should the allegations in the Amended Complaint prove true. Nevertheless, whether such products are indeed "100% kosher" is a religious question that is not the proper subject of inquiry by this Court.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Motion to Dismiss Plaintiffs' First Amended Complaint by Defendant ConAgra Foods, Inc. (Doc. No. [14]) is **GRANTED**.

2. Plaintiffs' First Amended Class Action Complaint (Doc. No. [8]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 31, 2013
                              s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge